## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

PAUL McKENZIE,          :
      Petitioner       :
                      :        No. 1:18-cv-2210
     v.             :
                      :        (Judge Rambo)
ERIC W. TICE,          :
      Respondent    :

## MEMORANDUM

On November 16, 2018, *pro se* Petitioner Paul McKenzie ("Petitioner"), who is currently incarcerated at the State Correctional Institution in Somerset, Pennsylvania ("SCI Somerset"), initiated the above-captioned action by filing a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. No. 1.) After receiving three (3) extensions of time, Respondent filed a response to the petition on October 4, 2019. (Doc. No. 17.) On October 7, 2019, Petitioner filed a motion requesting that the Court conduct an evidentiary hearing and a fact-developing procedure. (Doc. No. 18.) After receiving three (3) extensions of time, Petitioner filed his traverse on March 16, 2020. (Doc. No. 27.) Petitioner's § 2254 petition is, therefore, ripe for resolution. For the following reasons, the Court will deny his § 2254 petition (Doc. No. 1) and his motion requesting that the Court conduct an evidentiary hearing and a fact-developing procedure (Doc. No. 18).

# I.   BACKGROUND

## A.   Procedural History

On January 12, 2012, the District Attorney for York County, Pennsylvania, charged Petitioner with criminal attempt—criminal homicide, aggravated assault, two (2) counts of rape, sexual assault, aggravated indecent assault without consent, aggravated indecent assault—forcible compulsion, aggravated indecent assault—threat of forcible compulsion, unlawful restraint with serious bodily injury, and false imprisonment. (Doc. No. 17-1 at 18-19.)[1] All of these charges stemmed from an incident that occurred on November 5, 2011. (*Id.* at 18.) The Superior Court of Pennsylvania set forth the background of the case as follows:

> In this case, [K.N.] testified that [Appellant] strangled her multiple times to the point of losing consciousness. The first time he strangled her was with his hands, the second time was with his [t]-[s]hirt that he had taken off and twisted into a straight line and then wrapped it around her neck, and the third time was with a shoelace he had removed from one of his sneakers. While [Appellant] was strangling [K.N.] with the shoelace, she tried to get her fingertips underneath the shoelace so she could get some air. [K.N.] also testified that [Appellant] punched her in the head—behind the ears, on top of the head, and around her forehead. [K.N.] tried to block the blows by putting her hands over her head. [Appellant] also punched her in the back to get her to release her hands so he could continue punching her in the head. [K.N.] also testified that [Appellant] shoved his fingers up inside her [vagina] so hard that it pushed her back against the wall. [K.N.] also testified that [Appellant] raped her twice during this ordeal.

---

[1] For ease of reference, the Court utilizes the pagination assigned to all documents filed in the above-captioned case by the CM/ECF electronic filing system.

When [K.N.] tried to get away, [Appellant] caught up with her[,] grabbed her by her hair and around the neck[,] and dragged her back to the room. The next thing [K.N.] remembered was [Appellant] standing over her and taking his shoelace out of his shoe, telling her that "now you really f[***]ed up." Furthermore, throughout the whole ordeal, [Appellant] kept telling [K.N.] that "it was time to die," that he was going to kill her, and that she was going to die.

[K.N.]'s account of what occurred on November 4, 2011 into November 5, 2011 was corroborated by the injuries that were documented by Geneva Keirn, the SAFE Nurse at York Hospital. Ms. Keirn prepared body maps of those injuries and also took photos of the injuries sustained by [K.N.]. . . .

In addition, Dr. Wayne Ross, a forensic pathologist, examined the medical records of [K.N.], the SAFE [n]urse's notes and documentation of injuries, the photos of the scene, photos of [K.N.] taken by the SAFE [n]urse and by her family members and police, reviewed the police report and preliminary statements by [K.N.], and performed an analysis. His conclusions were consistent with [K.N.]'s account of what happened. Dr. Ross concluded that her various injuries were consistent with: [h]air being pulled[,] [b]lunt force trauma[,] [r]epeated strangulation[,] and [d]efensive wounds. Dr. Ross also concluded that [K.N.]'s injuries were inconsistent with consensual intercourse as there were multiple tears, and the injuries indicate a severe amount of force was used and penetration was significant and severe. In addition, Dr. Ross also testified that his findings are inconsistent with rough sex . . . .

(Doc. No. 17-2 at 349-52.)

On September 14, 2012, court-appointed counsel Thomas W. Gregory, Jr. filed a motion for appointment of an expert and fees "to have a Doctor (Expert) examine the medical records and the report received from the District Attorney's Office." (Doc. No. 17-1 at 21.) The Court of Common Pleas for York County granted that motion on September 21, 2012. (*Id.* at 23.) Subsequently, Petitioner filed a *pro se* motion for substitution of counsel. (*Id.* at 24-31.) On November 19,

2012, the trial court granted Petitioner's motion and appointed attorney Joshua Neiderhiser to represent him. (*Id.* at 32.) On March 23, 2013, attorney Heather Reiner replaced attorney Neiderhiser. (*Id.* at 33.) The trial court held a jury trial on September 3, 4, and 5, 2013. On September 5, 2013, the jury found Petitioner guilty of aggravated assault, one (1) count of rape by forcible compulsion, aggravated indecent assault—forcible compulsion, and unlawful restraint. (Doc. No. 17-2 at 5.) On December 16, 2013, the trial court sentenced Petitioner to an aggregate sentence of 26 ½ to 53 years of incarceration. (*Id.* at 205.) Petitioner subsequently filed a timely post-sentence motion for a new trial and modification of sentence, which the trial court denied. (*Id.* at 207-25.)

Petitioner appealed to the Superior Court of Pennsylvania, arguing that: (1) there was insufficient evidence to support his convictions; (2) the jury's verdict was against the weight of the evidence; and (3) the sentence imposed by the trial court was unreasonable because it did not adequately address his rehabilitative needs. (*Id.* at 254-55.) On April 6, 2015, the Superior Court affirmed Petitioner's judgment of sentence. (*Id.* at 349-67.)

On March 29, 2016, Petitioner filed a *pro se* Post Conviction Relief Act ("PCRA") petition in the Court of Common Pleas for York County. (Doc. No. 17-3 at 5-16.) On March 31, 2016, the PCRA court granted Petitioner leave to proceed *in forma pauperis* and appointed attorney Scott McCabe to represent him. (*Id.* at

4

17.) Attorney McCabe was directed to either file an amended PCRA petition or a no-merit letter pursuant to *Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1988) and *Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. 1988), within forty-five (45) days. (*Id.*) Despite receiving an extension of time until July 13, 2016, attorney McCabe filed neither an amended petition nor a no-merit letter.

On November 15, 2016, Petitioner filed a *pro se* motion to remove attorney McCabe and requesting the appointment of new counsel. (*Id.* at 20-21.) The PCRA court did not rule on Petitioner's motion. On December 12, 2016, attorney McCabe filed a petition to withdraw as counsel and a no-merit letter. (*Id.* at 23-43.) The Commonwealth filed its response to the no-merit letter on February 14, 2017. (*Id.* at 54-55.)

On February 16, 2017, the PCRA Court issued a notice that it intended to dismiss Petitioner's PCRA petition without holding a hearing. (*Id.* at 59-66.) The PCRA Court also granted attorney McCabe's petition to withdraw. (*Id.* at 67.) After receiving an extension of time, Petitioner filed a response to the PCRA Court's notice on April 4, 2017. (*Id.* at 73-81.) On April 24, 2017, attorney Todd Mosser, appearing on Petitioner's behalf, filed a motion for an extension of time to file an amended response. (*Id.* at 85-87.) The PCRA Court did not rule on attorney Mosser's petition. On April 28, 2017, the PCRA Court entered an Order denying Petitioner's PCRA petition. (*Id.* at 89-93.)

On May 17, 2017, Petitioner, through attorney Mosser, filed a notice of appeal to the Superior Court. (*Id.* at 96.) On appeal, Petitioner raised the following claims: (1) the PCRA Court erred in determining that attorney Reiner was not ineffective for failing to secure an expert witness "to testify to the fact that the alleged victim's injuries pre-dated the alleged incident in this case and supported the proposition that she sustained them in a prior altercation"; (2) the PCRA Court erred in determining that attorney Reiner was not ineffective for failing to introduce police records indicating that Petitioner and the victim had been in an altercation within one (1) day of the attack; (3) the PCRA Court erred in determining that attorney Reiner was not ineffective for failing to obtain prison phone call recordings between Petitioner and the victim; and (4) the PCRA court erred in determining that attorney Reiner was not ineffective for failing to secure the victim's medical records indicating that the injuries to her genitalia were the result of a pre-existing disease. (*Id.* at 101-02.) On February 14, 2018, the Superior Court affirmed the denial of Petitioner's PCRA petition. (*Id.* at 263-73.) On August 7, 2018, the Supreme Court of Pennsylvania denied Petitioner's petition for allowance of appeal. (*Id.* at 274.) This Court received Petitioner's § 2254 petition on November 16, 2018. (Doc. No. 1.)

## B. Habeas Claims Presented

Petitioner raises the following claims for relief in his § 2254 petition:

1. Attorney Reiner was ineffective for failing to secure an expert witness's testimony despite the fact that funds had been allocated for the defense to locate an expert;

2. The PCRA Court erred by failing to rule upon Petitioner's motion for new counsel, causing Petitioner to be unable to exhaust his claims for relief;

3. Attorney Reiner was ineffective for failing to challenge the trial court's jurisdiction over Petitioner's criminal proceedings; and

4. Attorney Reiner was ineffective for failing to request jury instructions on the defense of consent as well as the lesser-included offense of reckless endangerment.

(Doc. No. 1 at 5-10.)[2]

## II.    STANDARD OF REVIEW

Habeas corpus is an "'extraordinary remedy' reserved for defendants who were 'grievously wronged' by the criminal proceedings." *See Dunn v. Colleran*, 247 F.3d 450, 468 (3d Cir. 2001) (quoting *Calderon v. Coleman*, 525 U.S. 414, 146 (1998)). The exercise of restraint by a federal court in reviewing and granting habeas

---

[2] In his traverse, Petitioner asserts that Respondent has not addressed a sufficiency of the evidence claim raised in his § 2254 petition. (Doc. No. 27 at 13.) A review of Petitioner's § 2254 petition, however, leads the Court to conclude that he never set forth such a claim. In an administrative Order dated January 2, 2019, the Court advised Petitioner of the limitations regarding the filing of future § 2254 petitions and directed him to complete and return the enclosed Notice of Election within forty-five (45) days. (Doc. No. 5.) Petitioner was given the opportunity to withdraw his § 2254 petition to file an all-inclusive petition raising all grounds for relief. (*Id.*) Petitioner was advised that failure to complete and return the Notice of Election would result in the Court ruling on his current § 2254 petition as filed. (*Id.*) A review of the docket reveals that Petitioner never returned the Notice of Election, and there is no indication before the Court that he never received the administrative Order. Accordingly, Petitioner's purported sufficiency of the evidence claim is not properly before the Court. *See Harper v. Kerestes*, No. 11-832, 2013 WL 5514285, at *8 (W.D. Pa. Oct. 4, 2013) (noting that "[i]ssues raised for the first time in a traverse are waived").

relief is appropriate due to considerations of comity and federalism. *See Engle v. Isaac*, 456 U.S. 107, 128 (1982). "The States possess primary authority for defining and enforcing the criminal law. In criminal trials they also hold the initial responsibility for vindicating constitutional rights. Federal intrusions into state criminal trials frustrate both the States' sovereign power and their good-faith attempts to honor constitutional law." *Id.* States also have a recognized interest in the finality of convictions that have survived direct review within the state court system. *See Brecht v. Abrahamson*, 507 U.S. 619, 620 (1993).

A district court may entertain an application for a writ of habeas corpus filed by a person in state custody "only on the ground that he is in custody in violation of the Constitution or laws of the United States." 28 U.S.C. § 2254(a). If a claim presented in a § 2254 petition has been adjudicated on the merits in state court proceedings, habeas relief cannot be granted unless:

> the adjudication of the claim – (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established [f]ederal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.* § 2254(d).

## III. DISCUSSION

### A. Claim Two: Non-Cognizable on Habeas Review

As his second claim for relief, Petitioner contends that the PCRA Court erred by failing to rule upon his motion for new counsel. (Doc. No. 1 at 7.) Petitioner maintains that this failure by the PCRA Court denied him his ability to exhaust his claims for relief in post-conviction proceedings. (*Id.*) Federal "habeas proceedings[, however,] are not the appropriate forum for [Petitioner] to pursue claims of error at the PCRA proceeding." *Lambert v. Blackwell*, 387 F.3d 210, 247 (3d Cir. 2004); *see also Holland v. Folino*, No. CIV.A. 13-6623, 2015 WL 1400660, at *1 (E.D. Pa. Mar. 26, 2015) (noting that "[e]rrors alleged during state collateral review are non-cognizable on federal review"). As the United States Court of Appeals for the Third Circuit has explained:

> The federal courts are authorized to provide collateral review where a petitioner is in state custody or under a federal sentence imposed in violation of the [C]onstitution or the laws or treaties of the United States. 28 U.S.C. §§ 2254, 2255. Thus, the federal role in reviewing an application for habeas corpus is limited to evaluating what occurred in the state or federal proceedings that actually led to the petitioner's conviction; what occurred in the petitioner's collateral proceeding does not enter into the habeas calculation.

*Hassine v. Zimmerman*, 160 F.3d 941, 954-55 (3d Cir. 1998). Thus, because Petitioner's second claim for relief is based on alleged error that occurred during his PCRA proceedings, it is not cognizable here. Accordingly, the Court must dismiss this claim.

## B. Claims One, Three, and Four—Ineffective Assistance of Counsel

In his remaining three claims, Petitioner asserts that attorney Reiner rendered ineffective assistance during his criminal proceedings. First, Petitioner contends that attorney Reiner failed to "secure the testimony of an expert witness, for which court-appointed funds had been allow[ed]." (Doc. No. 1 at 5.) Second, Petitioner maintains that attorney Reiner failed to challenge the trial court's jurisdiction over Petitioner's criminal proceedings. (*Id.* at 8.) Finally, Petitioner argues that attorney Reiner failed to request jury instructions on the defense of consent as well as the lesser-included offense of reckless endangerment. (*Id.* at 10.) Respondent asserts that Petitioner's claims are procedurally defaulted and lack merit. (Doc. No. 17 at 17-19.)

### 1. Exhaustion and Procedural Default

Absent unusual circumstances, a federal court should not entertain a petition for writ of habeas corpus unless the petitioner has satisfied the exhaustion requirement articulated in 28 U.S.C. § 2254(b). Under § 2254(c), a petitioner will not be deemed to have exhausted his available state remedies if he had the right under the law of the state to raise, by any available procedure, the question presented. *See O'Sullivan v. Boerckel*, 526 U.S. 838 (1999). A petitioner may exhaust a federal claim either by raising it on direct appeal or presenting it in post-conviction PCRA proceedings. *See id.* at 845. In addition, a claim is exhausted when it has been

"fairly presented" to the state court. *See Picard v. Connor*, 404 U.S. 270, 275 (1971). To that end, the federal habeas claim "must be the substantial equivalent of that presented to the state courts." *See Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997). The petition must do so "in a manner that puts [the respondents] on notice that a federal claim is being asserted." *See Bronshtein v. Horn*, 404 F.3d 700, 725 (3d Cir. 2005). "The Supreme Court has instructed that a claim is not 'fairly presented' if the state court 'must read beyond a petition or brief . . . in order to find material' that indicates the presence of a federal claim." *Collins v. Sec'y of Pa. Dep't of Corr.*, 742 F.3d 528, 542 (3d Cir. 2014) (quoting *Baldwin v. Reese*, 541 U.S. 27, 32 (2004)). Moreover, a habeas corpus petitioner has the burden of proving the exhaustion of all available state remedies. *See* 28 U.S.C. § 2254. Overall, the exhaustion requirement advances the goals of comity and federalism while reducing "piecemeal litigation." *See Duncan v. Walker*, 533 U.S. 167, 180 (2001).

"When a claim is not exhausted because it has not been 'fairly presented' to the state courts, but state procedural rules bar the applicant from seeking further relief in state courts, the exhaustion requirement is satisfied because there is an absence of available State corrective process." *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999). Claims deemed exhausted because of a state procedural bar are considered to be procedurally defaulted. *See, e.g.*, *Lines v. Larkins*, 208 F.3d 153, 159 (3d Cir. 2000). The district court then analyzes the claims under the

procedural default doctrine. *See id.* The purpose of this rule is to prevent habeas petitioners from avoiding the exhaustion doctrine by defaulting their claims in state court. *See Coleman v. Thompson*, 501 U.S. 722, 732 (1991). In *Cone v. Bell*, 556 U.S. 449 (2009), the United States Supreme Court explained:

> It is well established that federal courts will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a statelaw ground that is independent of the federal question and adequate to support the judgment. In the context of federal habeas proceedings, the independent and adequate state ground doctrine is designed to ensure that the State's interest in correcting their own mistakes is respected in all federal habeas cases. When a petitioner fails to properly raise his federal claims in state court, he deprives the State of an opportunity to address those claims in the first instance and frustrates the State's ability to honor his constitutional rights. Therefore, consistent with the longstanding requirement that habeas petitioners must exhaust available state remedies before seeking relief in federal court, we have held that when a petitioner fails to raise his federal claims in compliance with relevant state procedural rules, the state court's refusal to adjudicate the claim ordinarily qualifies as an independent and adequate state ground for denying federal review.

*Id.* at 465 (internal quotations and citations omitted).

However, habeas corpus review is not barred in every instance in which a state court invokes a procedural rule to preclude its review of the federal claims asserted by a state prisoner. A state procedural rule can preclude federal habeas corpus review "only when the state rule is 'independent of the federal question [presented] and adequate to support the judgment.'" *See Leyva v. Williams*, 504 F.3d 357, 365 (3d Cir. 2007) (citing *Nara v. Frank*, 488 F.3d 187, 199 (3d Cir. 2007)). The requirements of independence and adequacy are distinct. *See id.* A rule is

"independent" if it is not dependent on any federal constitutional question, but "[a] state procedural ground will not bar federal habeas relief if the state law ground is 'so interwoven with federal law' that it cannot be said to be independent of the merits of a petitioner's federal claims." *See Johnson v. Pinchak*, 392 F.3d 551, 557 (3d Cir. 2004). A rule is "adequate" if it was "firmly established, readily ascertainable, and regularly followed at the time of the purported default." *See Levya*, 504 F.3d at 366 (quoting *Szuchon v. Lehman*, 273 F.3d 299, 372 (3d Cir. 2001)).

A petitioner whose constitutional claims have not been addressed on the merits due to procedural default can overcome the default, thereby allowing federal court review, if the petitioner can demonstrate either: (1) "cause" for the default and "actual prejudice" as a result of the alleged violation of federal law; or (2) that the failure to consider the claims will result in a "fundamental miscarriage of justice." *See Coleman*, 501 U.S. at 750. In order to show "cause and prejudice" sufficient to overcome a state court default, a petitioner must demonstrate the "cause" for his default and "prejudice" attributable thereto. *See Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000) (citing *Harris v. Reed*, 489 U.S. 255 (1989)). "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Under the "prejudice prong," a petitioner has the burden of showing "not

merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *See United States v. Frady*, 456 U.S. 152, 170 (1982); *see also Holland v. Horn*, 519 F.3d 107, 112 (3d Cir. 2008).

To show a "fundamental miscarriage of justice," a petitioner must establish that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *See Schlup v. Delo*, 513 U.S. 298, 326 (1995). Demonstrating actual innocence requires a stronger showing than that needed to establish prejudice. *See id.* In *Goldblum v. Klem*, 510 F.3d 204 (3d Cir. 2007), the Third Circuit explained the applicable two-step inquiry as follows. First, a "court must decide 'whether the petitioner has presented new reliable evidence . . . not presented at trial,'" and second, if a petitioner "puts forth new evidence not considered by the jury, a court asks 'whether it is more likely than not that no reasonable juror would have convicted him in light of the new evidence.'" *See id.* at 225 (citing *Hummard v. Pinchak*, 378 F.3d 333, 340 (3d Cir. 2004)). If a petitioner can meet this standard by establishing "cause and prejudice" or a "fundamental miscarriage of justice," his default will be excused, and the Court may review the merits of the claim presented. *See id.*

During PCRA proceedings, Petitioner raised Grounds One, Three, and Four in his *pro se* PCRA petition. Appointed PCRA counsel filed a "no merit" letter. The

PCRA court addressed Petitioner's claims for relief in its Notice indicating that Petitioner's PCRA petition would be dismissed as well as its Order denying his PCRA petition. (Doc. No. 17-3 at 59-66, 89-93.) In his Rule 1925(b) statement, Petitioner indicated that he would be raising Ground One in his appeal of the dismissal of his PCRA petition. (*Id.* at 101.) As noted above, the Superior Court affirmed the dismissal of his PCRA petition. (*Id.* at 273.) With respect to Petitioner's claim regarding attorney Reiner's failure to hire an expert witness, the Superior Court, in a footnote, stated:

> Arguably, Petitioner raised before the PCRA court in the first instance his claim that the court erred in permitting PCRA counsel to withdraw due to counsel's failure to comply with *Turner/Finley*. Although Appellant did not state his claim in clear, plain terms in his *pro se* response to the PCRA court's Pa.R.Crim.P. 907 notice, he does refer generally to the failure to hire an expert and deficiencies in PCRA counsel's *Turner/Finley* duties.
>
> It is more debatable as to whether Appellant stated this issue in sufficient detail in his counseled concise statement pursuant to Pa.R.A.P. 1925(b). The concise statement does not refer to the deficiencies in PCRA counsel's *Turner/Finley* response in precise, clear terms, despite this being the crux of the claim he sets forth in his brief. Instead, in his concise statement, Appellant focuses on the PCRA court's dismissal of his petition notwithstanding the alleged existence of meritorious claims. With respect to an expert, Appellant specifically contends trial counsel was ineffective by not hiring an expert to demonstrate that K.N.'s injuries were from an altercation with another actor that pre-dated the incident at issue. Yet nowhere in his brief does Appellant mention the need for an expert to prove K.N. sustained the injuries in a previous altercation. Instead, Appellant suggests an expert was necessary to prove that the injuries were the result of K.N.'s unspecified medical condition involving the vaginal area or rough-but-consensual sex between K.N. and Appellant.

> Rather than finding waiver due to his concise statement, we determine that the issue Appellant presents on appeal fails on the merits because his PCRA counsel complied with *Turner/Finley* as discussed *supra*. Additionally, Appellant has waived any argument regarding the PCRA court's dismissal of his petition based upon the merit of his underlying claim of trial counsel ineffectiveness due to Appellant's failure to develop this argument in his brief. Appellant did not attempt to offer analysis or law demonstrating that the PCRA court was incorrect in concluding that his underlying claim lacked merit.

(*Id.* at 268 (internal citations omitted).) The Superior Court further noted that "[n]owhere in Appellant's PCRA petition, nor his response to the Pa.R.Crim.P. 907 notice, nor his brief, does Appellant specify the name of a specific expert willing to support his defense theories whom trial counsel knew or should have known about and utilized, let alone the specialty of said expert beyond the generic category of 'medical expert.'" (*Id.* at 272-73.)

Respondent asserts that Petitioner has procedurally defaulted Ground One because it "could have been raised on collateral appeal" and Petitioner "fail[ed] to fairly present the state appellate court with the opportunity to address this claim." (Doc. No. 17 at 23.) The Court agrees. Pennsylvania Rule of Appellate Procedure 2119(a) requires that all arguments presented on appeal be "followed by such discussion and citation of authorities as are deemed pertinent." Pa. R. App. P. 2119(a). Failure to cite legal authorities or to develop argument results in waiver. *See, e.g.*, *Maitland v. Gilmore*, No. 3:16-cv-2044, 2019 WL 4194201, at *6 (M.D. Pa. Sept. 4, 2019) (citing cases). Courts within the Third Circuit have concluded

that this "waiver rule" is an independent and adequate state court ground precluding federal habeas review. *See id.*; *see also Rodriguez v. Giroux*, No. CV 15-6182, 2017 WL 10821396, at \*17 (E.D. Pa. Feb. 17, 2017), *Report and Recommendation adopted*, 2019 WL 587314 (E.D. Pa. Feb. 12, 2019). Thus, Ground One is procedurally defaulted.

Moreover, Respondent is correct that Petitioner did not raise Grounds Three and Four in his appeal of the denial of his PCRA petition. Thus, these claims are unexhausted. *Lambert v. Blackwell*, 387 F.3d 210, 233-34 (3d Cir. 2004) (explaining that, for habeas claims in Pennsylvania to be exhausted, the claims must have been presented to both the PCRA court and the Superior Court). Petitioner can no longer appeal the dismissal of these claims to the Superior Court of Pennsylvania because appeals must "be filed within 30 days after the entry of the order from which the appeal is taken." Pa. R. App. P. 903(a). "Rule 903(a), codified as a state court appellate rule, fulfills the adequate and independent state ground doctrine because it is implemented regularly by the state courts as a prerequisite to obtaining appellate review." *Novasak v. Mazurkiewicz*, No. 93-2168, 1995 WL 430603, at \*5 n.12 (E.D. Pa. July 20, 1995); *see also McDonald v. Lamas*, No. 13-2957, 2016 WL 8710465, at \*4 (M.D. Pa. Nov. 18, 2016) (finding procedural default where petitioner failed to file a timely appeal pursuant to Rule 903(a)). Thus, while Petitioner's failure to exhaust Grounds Three and Four is excused because he can no longer pursue a timely

appeal, *see Slutzker v. Johnson*, 393 F.3d 373, 381 (3d Cir. 2004), these claims are procedurally defaulted.

Consequently, because Grounds One, Three, and Four are procedurally defaulted, the Court can entertain the merits of Petitioner's § 2254 petition only if he demonstrates cause and prejudice or a fundamental miscarriage of justice. Petitioner advances no compelling argument to establish that a fundamental miscarriage of justice will occur if this Court does not consider his claims. *See Schlup*, 513 U.S. at 326. Rather, Petitioner asserts that cause exists to overcome his procedural default because attorney Mosser, who represented him on appeal from the dismissal of his PCRA petition, rendered ineffective assistance by failing either to raise these issues or fully develop them on appeal. (Doc. No. 1 at 6, 9.) The Supreme Court has held that

> [w]here, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

*Martinez v. Ryan*, 566 U.S. 1, 18 (2012); *see also Cox v. Horn*, 757 F.3d 113, 119 (3d Cir. 2014). Here, however, because Petitioner alleges that appellate PCRA counsel rendered ineffective assistance, his procedural default is not excusable under the *Martinez* exception. *See Norris v. Brooks*, 794 F.3d 401, 404 (3d Cir. 2015) ("[T]he Court stated that the [*Martinez*] exception applies only to attorney error in

initial-review collateral proceedings, not appeals from those proceedings."); *Cox*, 757 F.3d at 119 (requiring a prisoner to show "the default was caused by ineffective assistance of post-conviction counsel or the absence of counsel [] in the initial-review collateral proceeding"); *Garcia v. Pennsylvania*, No. 3:14-CV-2214, 2018 WL 5981678, at *5 (M.D. Pa. Nov. 14, 2018) (citing *Martinez*, *Norris*, and *Cox* to conclude same).

In his traverse, Petitioner asserts that PCRA counsel's ineffectiveness establishes cause and prejudice to overcome his procedural default of Grounds One, Three, and Four. (Doc. No. 27.) For *Martinez* to apply, Petitioner must show that his ineffective assistance of trial counsel claims have "some merit," and that he had ineffective counsel or no counsel at the initial-review stage of the state collateral proceeding. *See Workman v. Sup't Albion SCI*, 915 F.3d 928, 937 (3d Cir. 2019). Here, Petitioner's state-appointed attorney withdrew pursuant to *Finley* and filed a letter of no-merit. The Third Circuit has concluded that a *Martinez* inquiry "focuses on whether *counsel*, not the prisoner, raised the ineffective assistance of counsel claim at the initial review collateral proceeding." *Mack v. Sup't Mahanoy SCI*, 714 F. App'x 151, 153 (3d Cir. 2017). In *Mack*, the court also held that where a petitioner fails to raise an ineffective assistance of counsel claim in responding to a letter of no-merit, the claim may still be excused by *Martinez* if "PCRA counsel was ineffective for filing a no-merit letter and not raising [the petitioner's] ineffective

assistance claim." *Id.* at 154. Therefore, if Petitioner's PCRA counsel was ineffective for not raising these claims of ineffective assistance of trial counsel in his no-merit letter, and if Petitioner's ineffective assistance of trial counsel claims are "substantial," or have "some merit," then *Martinez* would apply to excuse Petitioner's default. *See Workman*, 915 F.3d at 937.

Upon review of the record, the Court concludes that PCRA counsel did raise Petitioner's claims of trial counsel's ineffectiveness in his no-merit letter. (Doc. No. 17-3 at 26-43.) The PCRA court addressed them in its Notice of intent to dismiss Petitioner's PCRA petition as well as its Order denying his petition. (*Id.* at 59-66, 89-93.) Thus, Petitioner cannot rely upon the purported ineffectiveness of initial-review PCRA counsel to excuse his procedural default. Rather, Petitioner procedurally defaulted Grounds One, Three, and Four by failing to raise them on appeal from the denial of his PCRA petition and, as noted above, he cannot reply upon appellate PCRA counsel's failure to raise such claims to overcome his default.

Although Grounds One, Three, and Four are procedurally defaulted, Respondent also argues that they lack merit. (Doc. No. 17 at 17-19.) Accordingly, the Court will address the merits of these grounds below.

### 2. Merits

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court explained that there are two components to demonstrating a violation of the right to

effective assistance of counsel. First, the petitioner must show that counsel's performance was deficient. This requires showing that "counsel's representation fell below an objective standard of reasonableness." *See id.* at 688; *see also Williams v. Taylor*, 529 U.S. 362, 390-91 (2000). Second, under *Strickland*, the petitioner must show that he was prejudiced by the deficient performance. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. To establish prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *See id.* at 694. The *Strickland* test is conjunctive and a habeas petitioner must establish both the deficiency in the performance prong and the prejudice prong. *See Strickland*, 466 U.S. at 687; *Dooley v. Petsock*, 816 F.2d 885, 889 (3d Cir. 1987). As a result, if a petitioner fails on either prong, he loses. *See Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000) ("Because both parts of the test must be satisfied in order to show a violation of the Sixth Amendment, the court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.") (citation omitted); *Foster v. Ward*, 182 F.3d 1177, 1184 (10th Cir. 1999) ("This court may address the performance and prejudice components in any

order, but need not address both if Mr. Foster fails to make a sufficient showing of one.").

The two-pronged test established in *Strickland* "qualifies as 'clearly established Federal law'" for purposes of the AEDPA. *See Rainey v. Varner*, 603 F.3d 189, 197 (3d Cir. 2010) (quoting *Williams v. Taylor*, 529 U.S. 362, 391 (2000)). [3] Therefore, under § 2254(d)(1), the relevant inquiry in assessing ineffectiveness claims that have been adjudicated on the merits is whether the state court's decision involved an unreasonable application of *Strickland* or are based on an unreasonable determination of the facts. *See Jacobs v. Horn*, 395 F.3d 92, 107 n.9 (3d Cir. 2005). Moreover, Pennsylvania's three-pronged test for ineffective assistance claims, *see Commonwealth v Pierce*, 515 Pa. 153, 527 A.2d 973, 975-77 (Pa. 1987), is not contrary to *Strickland*, *see Jacobs*, 395 F.3d at 107 n.9.

### a. Claim One—Failure to Retain Expert Witness

In his first ground for relief, Petitioner faults attorney Reiner for not procuring an expert witness to testify "to the fact that the alleged victim's injuries predated the alleged incident in this case and supported the proposition that she sustained them in [a] prior unrelated altercation." (Doc. No. 1 at 5.) The PCRA court rejected this claim in its Notice indicating its intent to dismiss Petitioner's PCRA petition, stating:

---

[3] The standard under Pennsylvania law for ineffective assistance of counsel is consistent with the two-prong *Strickland* analysis. *See Werts v. Vaughn*, 228 F.3d 178, 203 (3d Cir. 2000).

Defendant contends that all counsel were ineffective because Attorney Gregory was granted permission from the Court to hire an expert witness, but none of the attorneys hired one. The mere fact that an expert witness was not obtained by Trial Counsel after receiving permission from the Court to do so is not sufficient to establish Trial Counsel's ineffectiveness. Moreover, shortly after Attorney Gregory received Court permission, he was removed as counsel of record at Defendant's request and new counsel was appointed. Defendant's defense at trial was that while he and the Victim had sex on the night in question, it was consensual and just got out of hand or a bit rough. Defendant does not indicate what kind of expert defense counsel should have employed on his behalf, nor does he indicate how doing so would have changed the outcome of his trial. Therefore, this claim fails to meet the first and third prongs of the ineffectiveness standard.

(Doc. No. 17-3 at 61-62.) The Superior Court of Pennsylvania affirmed the dismissal of Petitioner's PCRA petition, noting, in a footnote, that Petitioner "did not attempt to offer analysis or law demonstrating that the PCRA court was incorrect in concluding that his underlying claim [regarding the failure to retain an expert] lacked merit." (*Id.* at 268.)

"There is a strong presumption that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than sheer neglect." *Harrington v. Richter*, 562 U.S. 86, 109 (2011). With respect to a claim that counsel failed to call a certain witness, a petitioner "cannot meet his burden to show that counsel made errors so serious that his representation fell below an objective standard of reasonableness based on vague and conclusory allegations that some unspecified and speculative testimony might have established his defense. Rather, he must set forth facts to support his contention." *Zettlemoyer v. Fulcomer*, 923 F.2d 284, 298 (3d

Cir. 1991). Here, Petitioner only speculates that an expert witness would have testified that the victim sustained the injuries in a prior altercation. Thus, counsel's choice to forego calling an expert witness on this subject "is an appropriate tactical decision that does not entitle [Petitioner] to habeas corpus relief." *Moyer v. Ferguson*, No. 1:17-cv-1379, 2019 WL 1988400, at *12 (M.D. Pa. May 6, 2019) (citing *Alexander v. Shannon*, 163 F. App'x 167, 175 (3d Cir. 2006)). In his traverse, Petitioner claims that trial counsel should have hired a forensic pathologist to testify about the victim's injuries. (Doc. No. 27 at 18.) Petitioner, however, again fails to explain how such testimony would have changed the outcome of his trial. The Court agrees with Respondent that Petitioner has not demonstrated that the state court's disposition of this claim was contrary to, or was an unreasonable application of, United States Supreme Court precedent. Moreover, Petitioner has not demonstrated that the state court's determination of the facts was unreasonable. Thus, Ground One will be denied.

### b. Claim Three—Failure to Challenge Jurisdiction

In his third ground for relief, Petitioner alleges that attorney Reiner rendered ineffective assistance by failing to challenge the trial court's jurisdiction over his criminal proceedings. (Doc. No. 1 at 8.) Petitioner contends that the trial court lacked jurisdiction because Magistrate Nixon, who was the victim's mother and a

witness for the prosecution, was the authority who determined that probable cause existed to arrest Petitioner for the offense. (*Id.*)

The PCRA court addressed this claim in its Notice announcing its intention to dismiss Petitioner's PCRA petition, stating:

> Much of Defendant's PCRA complaints pertain to the fact that MDJ Barbara Nixon is the Victim's mother and Defendant's contentions that there was a conflict of interest as a result of that relationship.
>
> Defendant contends that:
>
> At the preliminary hearing, Barbara Nixon was there, was seen talking to an ADA, is a witness in this case, is the mother of the accuser, and spoke with MDJ Haskell before, during and after the filing of a warrant for Defendant's arrest;
>
> There was concealment of ex parte communication between MDJ Haskell and MDJ Nixon in determining probable cause for the warrant;
>
> There was no neutral detached determination;
>
> There was misconduct by DA Office, MDJ Nixon, MDJ Haskell, and all attorneys that represented Defendant at trial court.
>
> These are nothing more than bald assertions. Moreover, the issue of Barbara Nixon's involvement in this case was addressed immediately prior to trial on September 3, 2013.
>
> MDJ Nixon was the presiding issuing authority in Magisterial District Court 19-1-05 in York City, and the incident in this case was within this jurisdiction. However, MDJ Nixon, who may have been retired by the time this incident occurred, did not preside over the preliminary hearing; Senior Magisterial District Judge Robert Davis presided over Defendant's preliminary hearing. The warrant for Defendant's arrest was signed by MDJ Ronald Haskell, and there is no

indication that MDJ Nixon had anything to do with the issuance of that arrest warrant (a copy of the Arrest Warrant is attached). The Police Criminal Complaint and the Affidavit of Probable Cause both bear the signature of MDJ Ronald Haskell, not MDJ Nixon.

Barbara Nixon is the Victim's mother and was a fact witness for the prosecution. As a result, it would have been appropriate and necessary for Barbara Nixon to be seen talking with the Assistant District Attorney involved with the case. Despite Defendant's contention to the contrary, there is nothing to indicate that Barbara Nixon had any involvement in this case in her capacity as an MDJ, or that there was any inappropriate conduct by her. Therefore, Defendant's contentions in this regard are without merit.

(Doc. No. 17-3 at 60-61 (internal citation omitted).)

Upon review of the record, the Court concludes that Ground Two lacks merit. There was simply no plausible basis upon which attorney Reiner could argue that the trial court lacked jurisdiction simply because MDJ Nixon was the victim's mother. Counsel "cannot be deemed ineffective for failing to raise a meritless claim." *Werts*, 228 F.3d at 203. Petitioner has not demonstrated that the state court's disposition of this claim was contrary to, or was an unreasonable application of, United States Supreme Court precedent. Moreover, Petitioner has not demonstrated that the state court's determination of the facts was unreasonable. Accordingly, Ground Three will be denied.

### 3. Claim Four—Failure to Request Jury Instructions

In his fourth and final claim for relief, Petitioner faults attorney Reiner for not requesting that the trial court instruct the jury on the lesser included offense of

reckless endangerment as well as the defense of consent. (Doc. No. 1 at 10.) According to Petitioner, counsel should have requested these instructions because the victim's "testimony as evidence to justify consent and reckless endangerment instruction[s]." (*Id.*) The PCRA court addressed this claim in its Order denying Petitioner's PCRA petition, stating:

> Defendant further claims that he had requested that all prior counsel request a jury instruction on the lesser included offense of reckless endangerment to the aggravated assault charge, and a consent instruction on the rape charge. Defendant acknowledges, however, that Trial Counsel did request the lesser included jury charges in the Judge's chambers, but he was informed by Trial Counsel that counsel's request was denied. Furthermore, at the conclusion of the Court's instructions to the jury, the Court, on the record, asked if either counsel had any objection to the Court's instructions and Defense Counsel had no objection.

> Also, while recklessly endangering another person is a lesser included offense to aggravated assault, "a trial court is not obliged to grant a request for an instruction on a lesser-included offense unless there is support for such an instruction in the evidence." *Commonwealth v. White*, 490 Pa. 179, 182-183, 415 A[.]2d 399, 400 (1980). In this case, there was no evidence presented (and Defendant has not cited to any) which would support an instruction for recklessly endangering or dispute the elements of aggravated assault. Defendant did not testify on his own behalf, and there were no witnesses presented in his defense.

> In regard to a jury instruction on consent, for the Court to give such an instruction, there would have to have been some evidence of consent presented at trial which would have put that defense before the jury. As there was no evidence of consent presented at trial (and Defendant has not cited to any), the Court properly declined to give the instruction.

(Doc. No. 17-3 at 89-90 (first and third internal citations omitted).)

Upon review of the record, the Court concludes that Petitioner has not demonstrated that the state court's disposition of this claim was contrary to, or was an unreasonable application of, United States Supreme Court precedent. Moreover, Petitioner has not demonstrated that the state court's determination of the facts was unreasonable. While Petitioner's defense at trial was that he and the victim engaged in consensual intercourse (Doc. No. 17-3 at 61-62), Petitioner has not demonstrated prejudice from counsel's failure to request an instruction regarding the defense of consent. When assessing prejudice, "a court 'must consider the totality of the evidence before the judge or jury.'" *Ross v. Dist. Att'y of the Cty. of Allegheny*, 672 F.3d 190, 210 (3d Cir. 2012) (citing *Strickland*, 466 U.S. at 695). While the victim testified that she and Petitioner went upstairs with the intention of having sex (Doc. No. 17-1 at 87-88), she explicitly testified on redirect that she did not agree to what occurred in her bedroom and did not verbally agree to have sex with Petitioner that night (*id.* at 94). Ample evidence of Petitioner's guilt was presented to the jury, and he has not met his burden of demonstrating that, but for counsel's failure to request a jury instruction regarding consent, the result of his trial would have been different. *See Albrecht v. Horn*, 485 F.3d 103, 128-29 (3d Cir. 2007) (concluding that petitioner did not suffer prejudice from counsel's failure to request a limiting instruction because of "ample if not overwhelming evidence of [his] guilt").

The record also reflects that counsel was not ineffective for failing to again request, at the close of evidence, an instruction regarding the lesser included offense of reckless endangerment. Under Pennsylvania law, a person is guilty of reckless endangerment if he "recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury." 18 Pa. Cons. Stat. Ann. § 2705. A person acts in a reckless manner when he consciously disregards a substantial and unjustifiable risk. 18 Pa. Cons. Stat. Ann. § 302(b)(3). A person is guilty of aggravated assault if he "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly, or recklessly under circumstances manifesting extreme indifference to the value of human life." 18 Pa. Cons. Stat. Ann. § 2702(a)(1). Thus, the Commonwealth must prove that the defendant "consciously disregarded an unjustified and extremely high risk that his actions might cause death or serious bodily harm." *Commonwealth v. Fierst*, 423 Pa. Super. 232, 245, 620 A.2d 1196, 1203 (1993). In other words, "the offensive act must be performed under circumstances which almost assure that injury or death will ensue." *Commonwealth v. O'Hanlon*, 539 Pa. 478, 482, 653 A.2d 616, 618 (1995). Moreover, as the Superior Court of Pennsylvania has noted,

> [o]nce the prosecution has proved that an individual caused or attempted to cause serious bodily injury under circumstances manifesting an extreme indifference to human life, it also has established that the same person recklessly engaged in conduct that placed or may have placed another person in danger of death or serious

> bodily injury. Every element of reckless endangerment is subsumed in the elements of aggravated assault.

*Commonwealth v. Dobbs*, 452 Pa. Super. 488, 493, 682 A.2d 388, 391 (1996), *superseded on other grounds by* 42 Pa. Cons. Stat. Ann. § 9765.

Here, Petitioner has not demonstrated prejudice from counsel's failure, after the presentation of evidence, to request an instruction regarding the lesser included offense of reckless endangerment. The Commonwealth presented ample evidence that Petitioner "consciously disregarded an unjustified and extremely high risk that his actions might cause death or serious bodily harm." *Fierst*, 423 Pa. Super. at 245, 620 A.2d at 1203. Petitioner he has not met his burden of demonstrating that, but for counsel's failure to request a jury instruction regarding reckless endangerment, the result of his trial would have been different. For these reasons, Petitioner's fourth and final ground for relief must be dismissed.

## IV. MOTION FOR AN EVIDENTIARY HEARING

As noted above, Petitioner has filed a motion requesting that this Court conduct an evidentiary hearing and a fact-developing procedure. (Doc. No. 18.) He maintains that he "was denied a full and fair fact hearing on the 4th, 5th, 6th, and 14th amendment rights of the U.S. Constitution raised in [his] state post conviction motion." (*Id.* at 2.) According to Petitioner, he "repeated[ly] attempt[ed]" to request an evidentiary hearing before the PCRA Court, but those requests were denied." (*Id.* at 3.)

Section 2254(e)(2) states:

> **(2)** If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—
>
>> **(A)** the claim relies on—
>>
>>> **(i)** a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>>>
>>> **(ii)** a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>>
>> **(B)** the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2). Upon consideration of the record, the Court concludes that Petitioner has not made the requisite showing. Accordingly, his motion requesting that the Court conduct an evidentiary hearing and a fact-developing procedure (Doc. No. 18) will be denied.

## V.    CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A COA may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of

reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322 (2003). In the instant matter, jurists of reason would not find the disposition of Petitioner's petition debatable. As such, no COA will issue.

## VI.     CONCLUSION

For the foregoing reasons, Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. No. 1) and his motion requesting that the Court conduct an evidentiary hearing and a fact-developing procedure (Doc. No. 18) will be denied and a COA will not issue. An appropriate Order follows.


s/ Sylvia H. Rambo
United States District Judge

Dated: March 23, 2020